IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

|  |  |  |
|---|---|---|
| KEITH HALLACHER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:21-cv-00466 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| THE ALLSTATE INSURANCE CO., | ) | By:   Hon. Thomas T. Cullen |
| | ) |          United States District Judge |
| Defendant. | ) | |

Plaintiff Keith Hallacher, proceeding *pro se*, sued Defendant The Allstate Insurance Company ("Allstate"), after Allstate closed Hallacher's insurance agency and gave his book of business to another Allstate agent.[1] Hallacher alleges that his agency was meeting the business objectives that Allstate had established when he signed Allstate's Exclusive Agency Agreement ("the Contract"), so Allstate had no right to close his agency. Allstate moves to dismiss these claims arguing that, under the Contract's plain language, it was entitled to close Hallacher's agency at any time with or without cause. Because the Contract gives Allstate virtually unlimited authority to close an agency, the court will grant Allstate's motion to dismiss.

I. **BACKGROUND**

On May 1, 2015, Hallacher signed an "Exclusive Agency Agreement" with Allstate which authorized Hallacher to sell insurance plans offered by Allstate. (*See* ECF No. 23-1.)

---

[1] Hallacher's Amended Complaint does not specifically name any causes of action, but in his response to the motion to dismiss Hallacher states he is alleging "breach of contract and . . . taking of property." (Pl.'s Resp. at 4 [ECF No. 23]; *see* Amend. Compl. ¶ 21 [ECF No. 16].) Because of the nature of his allegations, the court construes Hallacher's claim for "taking of property" as a conversion claim.

1

Prior to signing the Contract, Hallacher attended two corporate training sessions where Allstate representatives informed him that "he would retain his position as an Exclusive Agent so long as certain validation targets were met."[2] (Amend. Compl. ¶ 2–4.) In conjunction with this new business venture, Hallacher rented an office space and purchased two books of business from other entities.

In January 2018, Fred Miller, Allstate's Field Sales Leader overseeing Hallacher's business, informed him that he was not meeting Allstate's "validation targets." (*Id.* ¶ 9.) Over the next eight months, Hallacher alleges that Miller "continuously harassed" him about not meeting Allstate's validation targets. (*Id.* ¶ 10.) Hallacher sent an e-mail to Robert Becker, an Allstate Vice President, and Jennifer Yingling, a territory sales leader for Allstate, detailing his concerns about Miller. Hallacher received calls from both Becker and Yingling who apparently assured him that Allstate would not close his agency because he was meeting his validation targets.

In March 2019, Allstate introduced a new business objective for agencies to sell automotive insurance policies. Hallacher alleges that this new objective was not part of his original validation targets. Yingling sent a letter to Hallacher on behalf of Allstate in May 2020, notifying him that Allstate was closing his agency. Allstate informed Hallacher that it would reimburse him $4,748.21 per month for a period of 24 months, totaling $113,957.04. (*Id.* ¶ 17.) Hallacher alleges he spent approximately $150,000 to get his agency up and running and

---

[2] Validation targets are essentially business and sales objectives that Allstate imposes on its agencies. For example, "sell a certain number of automobile insurance policies." (Pl.'s Resp. at 2.) The Contract imposes a duty on Allstate agents to "meet certain business objectives . . . in the areas of profitability, growth, retention, customer satisfaction and customer service." (ECF No. 23-1, at 3.)

maintain its operations. (*Id.* ¶ 18.) He also alleges he has lost "approximately $2,500,000 in future earnings." (*Id.* ¶ 20.)

Hallacher filed a complaint in the Circuit Court of Roanoke City on June 24, 2021. Hallacher's original complaint was filed and signed by a Craig Hallacher ("Craig"). Craig is not authorized to practice law in the state of Virginia.[3] Allstate timely removed the case to this court and filed a motion to dismiss. Hallacher filed an amended complaint on October 28, 2021. This complaint was signed and filed by Hallacher himself and not by Craig, although it still bears Craig's name, address, phone number, and e-mail address.

Allstate now moves to dismiss Hallacher's amended complaint, arguing that Hallacher has failed to state a claim for breach of contract or conversion.[4]

## II. STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief

---

[3] According to Hallacher, Craig is an attorney licensed in Michigan, although his address is in North Carolina.

[4] Allstate also argues that, because the amended complaint includes Craig's name and information—although it is technically "signed" by Hallacher—it should be dismissed as a nullity because Craig is not licensed to practice in Virginia. While Hallacher states that he has signed and filed the Amended Complaint himself, Allstate questions whether Craig is "ghost-writing" Hallacher's pleadings. But Allstate fails to point to a case in which a court has dismissed a complaint on the basis of ghost-writing. Instead, it cites only to *Laremont-Lopez v. Se. Tidewater Opportunity Ctr.*, where the district court refused to sanction attorneys who allegedly ghost-wrote pleadings. *See* 968 F. Supp. 1075, 1080 (E.D. Va. 1997). Other cases provide clearer guidance. *See Burgess v. Vitola*, No. 07cvs4679, 2008 WL 821539, at *4 (N.C. Super. Ct., Bus. Ct., March 26, 2008) (denying the plaintiff's motion to strike a defendant's filings even when the defendant admitted to receiving the assistance of an attorney who was unauthorized to practice law in North Carolina). In *Burgess*, Judge Albert Diaz (then sitting on the North Carolina Business Court) held that striking the defendant's filings "would unfairly penalize [her] for the conduct of [her] attorney." *Id.* at *5. Following this example, the court will instead decide this motion on its merits.

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

### III.  ANALYSIS

Allstate argues that Hallacher's amended complaint should be dismissed because it fails to state a claim for breach of contract or conversion upon which relief could be granted. As an initial matter, the court will consider the amended complaint, together with the Contract that Hallacher filed as Exhibit A to his response to the motion to dismiss, to determine whether Hallacher has satisfied the pleading requirements of Federal Rule of Civil Procedure 12(b)(6). "While a 12(b)(6) motion focuses on the allegations of the complaint, it is well established that a document attached to a motion to dismiss may be considered when evaluating a motion to dismiss if the document was 'integral to the complaint and authentic.'" *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164 (4th Cir. 2016) (quoting *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). The Contract is referenced in Hallacher's amended complaint (*see* Amend. Compl. ¶ 21), and it is integral to the dispute. Moreover, neither party contests its authenticity.

### A. Conversion[5]

To state a claim for conversion under Virginia law, a plaintiff must allege "(1) ownership or right to possession of property at the time of the conversion, and (2) the defendant's wrongful exercise of dominion or control over the plaintiff's property . . . ." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 457 (E.D. Va. 2009) (citing *United Leasing Corp. v. Thrift Ins. Corp.*, 440 S.E.2d 902, 905 (Va. 1994)). Allstate argues that Hallacher fails to state a claim for conversion because he has not alleged ownership of any property Allstate allegedly took when it closed his agency. Hallacher alleges that Allstate's decision to close his agency "resulted in taking [his] personal property of $114,000 in business assets that [he] purchased." (Amend. Compl. ¶ 21.) In his response, Hallacher clarifies that Allstate took the book of business that he purchased and gave it to another Allstate agent after closing his agency.[6] In the light most favorable to Hallacher, the court assumes this is the "property" Allstate allegedly took. But under the plain language of the Contract, the parties agreed that Allstate "will own all business produced under the terms of this Agreement." (ECF No. 23-1, at 2.) This includes Allstate insurance policies that Hallacher procured from his clients. Allstate thus cannot convert property it owns. The complaint and pleadings do not indicate any other property that Allstate allegedly took from Hallacher. This claim must be dismissed.

---

[5] Allstate originally argues that Hallacher has not stated a legally cognizable claim for "taking of property" because (1) he provides no clear allegation about what property of his Allstate took and (2) Allstate is not a government actor that can participate in a "taking of property." As previously noted, because of the parties and the nature of Hallacher's allegations, the court construes this statement as a claim for conversion and will analyze it accordingly.

[6] These details do not appear in the complaint.

B. **Breach of Contract**

Allstate also moves to dismiss Hallacher's breach of contract claim, noting that Hallacher has not specified which contract terms it allegedly breached. Hallacher states that "Allstate breached the contract by closing [his] insurance agency." (Pl's Resp. at 4.) Allstate argues that under the plain language of the Contract, simply closing Hallacher's insurance agency is not a breach of the Contract.

To state a claim for breach of contract, a plaintiff must show "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Cunningham Bros. Used Auto Parts, Inc. v. Zurich Am. Ins. Co.*, No. 6:17-cv-00051, 2017 WL 4707464, at *2 (W.D. Va. Oct. 19, 2017) (quoting *Filak v. George*, 594 S.E.2d 610, 619 (Va. 2004)). Hallacher's claim fails because, based on the plain language of the Contract, he cannot demonstrate that Allstate breached any obligation to him.

The Contract contains an integration clause establishing that the Contract is "the sole and entire agency agreement" between the parties. (ECF No. 23-1, at 2.) Most notably, the Contract permitted either party to terminate the agreement "with or without cause." (*Id.* at 9.) That provision also states that the non-breaching party is entitled to 90 days' prior written notice. (*Id.*) While the timeline is not readily apparent from the complaint, Hallacher does not appear to allege that Allstate gave him less than the required 90 days' notice before closing his agency.

That section also provides that Allstate will compensate the party "for a period up to and including the specified termination date." (*Id.*) Hallacher includes in his complaint that

6

Allstate promised him compensation of $4,748.21 per month for a period of 24 months. (Amend. Compl. ¶ 17.) He does not allege that Allstate reneged on this promise. There are no other allegations in the complaint that could lead the court to conclude that Allstate breached the Contract.

Hallacher devotes some time to discussing Allstate imposing additional validation targets without his consent or consultation and using that as a basis for terminating the Contract and closing his agency. The Contract required Hallacher to "meet certain business objectives established by [Allstate] in the areas of profitability, growth, retention, customer satisfaction, and customer service" and to "build and maintain a profitable book of business [and] assist [Allstate] in its efforts to achieve market penetration for all forms of insurance offered by [Allstate]." (ECF No. 23-1, at 3.) At the same time, Allstate reserved in the Contract "the right to amend the Supplement, EA Manual, and Agency Standards at any time without prior notice . . . ." (*Id.* at 2.) Allstate then had every right, under the Contract, to adopt new validation targets for its agencies and require its contractors to meet those standards.

Hallacher eloquently argued before the court that Allstate's contractual terms create an extreme imbalance of power between individual agency owners and Allstate. Hallacher understandably questions the fairness of this business model—asking individual entrepreneurs to invest substantial sums of money only to have their agencies closed with little notice. The court credits these arguments, which are made in good faith, but nonetheless finds that the plain language of the Contract controls and forecloses Hallacher's legal claims.

## IV. CONCLUSION

The Contract encompasses the entirety of the agreement between Hallacher and Allstate. By its plain language, Allstate owned any and all business Hallacher produced and could terminate the Contract without cause at any time. For these reasons, Hallacher's complaint fails to state claims for breach of contract or conversion, and the court will grant Allstate's motion to dismiss.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 19th day of January, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE